IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–03310–KMT

DIANE CONTRERAS,

    Plaintiff,

v.

CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## ORDER

This matter is before the court on review of the Commissioner's denial of Plaintiff's application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-33 ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

## FACTS

In January 2011, Plaintiff filed an application for DIB under Title II of the Act. (Administrative Record ["AR"], Doc. No. 10, at 246-47.) Plaintiff initially claimed she became impaired in June 2009 due to headaches, eyestrain, and body aches (*id.* at 276-77); however, she later amended her alleged onset date to June 17, 2010 (*id.* at 200) and amended her impairments to include, *inter alia,* vertigo, depression, and anxiety (*id.* at 202-206). After the state agency denied her claim (*id.* at 185-87), Plaintiff requested a hearing before an administrative law judge ("ALJ") (*id.* at 188-190). A hearing was held on April 23, 2012, at which Plaintiff and an impartial vocational expert ("VE") testified. (*Id.* at 137-71.)

In May 2012, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1] (*Id.* at 118-129.) Initially, the ALJ found that Plaintiff last met the insured status requirements of the Act on March 31, 2011. (*Id.* at 118, 120.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her amended onset date of June 17, 2010 through the last insured date of March 31, 2011. (*Id.* at 120.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obstructive sleep apnea, Type-II diabetes, hypertension, mild bilateral osteoarthritis of the hips, and plantar fasciitis. (*Id.* at 120-21.) The ALJ concluded that Plaintiff' vertigo, depression and anxiety were non-severe. (*Id.*) At step three, the ALJ found that through the date last insured, Plaintiff's impairments, while severe, did not meet or medically equal any of the impairments or combinations of impairments listed in the social security regulations. (*Id.* at 121-22.)

The ALJ then found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) with additional limitations, meaning the claimant can occasionally lift 20 pounds and frequently lift 10 pounds, can stand, sit and walk for 6-hours out of an 8 hour day and can frequently balance and occasionally twist, climb, stop, crawl, crouch and kneel.

(*Id.* at 122-127.)

---

[1] The five-step process requires that the ALJ consider whether a claimant (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988). The claimant has the burden of proof on steps one through four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).

At step four, the ALJ found that, through the date last insured, Plaintiff was capable of performing her past work as a preschool teacher because that work did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.* at 127-28.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to DIB. (*Id.* at 128-29.)

Plaintiff requested review of the ALJ's determination by the Appeals Council. (*Id.* at 113.) Plaintiff submitted additional evidence for review by the Appeals Council. (*Id.* at 7-105.) The Appeals Council denied Plaintiff's request to review the ALJ's determination. (*Id.* at 1-4.) The Appeals Council found that the new evidence submitted by Plaintiff did not affect the ALJ's decision because it post-dated the date Plaintiff was last insured for disability benefits. (*Id.* at 2.)

Plaintiff filed this action on December 9, 2013. (Compl., Doc. No. 1.) Plaintiff's Opening Brief was filed on May 9, 2014 (Doc. No. 13), the Commissioner's Response Brief was filed on June 11, 2014 (Doc. No. 14), and Plaintiff's Reply Brief was filed on June 24, 2014 (Doc. No. 15). Accordingly, this matter is ripe for the court's review and adjudication. For the following reasons, the Commissioner's determination is REVERSED and REMANDED.

## STANDARD OF REVIEW

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the district court is to examine the record and determine whether it "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standard." *Ricketts v. Apfel,* 16 F. Supp. 2d 1280, 1287 (D. Colo. 1998). The ALJ's decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir.2004).

Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence requires "more than a scintilla, but less than a preponderance" of the evidence. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir.1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)).

## ANALYSIS

### A. *Whether the ALJ Erred in Discounting Plaintiff's Treating Physician's Opinion regarding Plaintiff's Vertigo*

Although the court ultimately concludes that remand is warranted in this case, the court first addresses Plaintiff's contention that the ALJ erred in conducting the RFC analysis by giving "no weight" to the opinion of her treating physician, Dr. Candace Sobel, that Plaintiff was disabled when having a vertigo flare.

An RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The RFC is an assessment of the most a claimant can do despite his or her limitations. *Id.* An ALJ must make specific RFC findings based on all the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96–8p, at *7.

There is no dispute that Dr. Sobel, Plaintiff's primary care physician, was a treating physician. A treating physician's opinion must be given controlling weight if it "is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004). When a treating physician's opinion is not given controlling weight, the ALJ must explain what weight, if any was assigned to the opinion "using all of the factors provided in 20 C.F.R. §404.1527 and 416.927."[2] *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion may not be rejected absent specific, legitimate reasons clearly articulated in the hearing decision. *See id* at 1301; *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir. 1987).

---

[2] The six factors are as follows:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins,* 350 F.3d 1297, 1301 (10th Cir. 2003) (citation omitted).

Despite acknowledging that Dr. Sobel was a treating physician, the ALJ afforded Dr. Sobel's opinion "no weight" because (1) the medical evidence of record failed to document the frequency and severity of Plaintiff's vertigo flares, (2) Plaintiff testified at the hearing that her headaches and dizzy spells were not severe and (3) Dr. Sobel's own notes failed to support her conclusion that Plaintiff would be disabled due to vertigo flares. (AR. at 127.)

The court finds that the ALJ had specific, legitimate reasons for rejecting Dr. Sobel's opinion. Plaintiff argues that there is ample medical evidence demonstrating the frequency and severity of Plaintiff's vertigo flares. While this is true, those medical records relate almost entirely to the 6-month time period between June 17, 2010 and November 2010.[3] *Cf. Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (To be disabling, the claimants condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months). By early September 2010, Dr. Stenberg, a neurologist, concluded that Plaintiff did not require further workup for her vertigo because she was "clearly on the mend" (*id.* at 629), and in late October 2010, Plaintiff reported that she was not having any current issues with her vertigo (*id.* at 352). Moreover, in early November 2010, Dr. Mclean, an ear, nose, and throat (ENT) specialist found that, notwithstanding Plaintiff's subtle transient nystagmus, an objective

---

[3] *See, e.g.,* AR 372-73 (first report of symptoms consistent with vertigo on June 17, 2010); *id.* at 369-70 (June 29, 2010 appointment following up on convenient care diagnosis of vertigo); *id.* at 332, 339 (appointments with Dr. Mclean, and ear, nose, and throat specialist, at which otolith procedures were conducted); *id.* at 360 (August 12, 2010 appointment with Dr. Sobel reporting continued dizziness); *id.* at 627, 629 (September 2, 2010 appointment with Dr. Sternberg, a neurologist); *id.* at 330-331 (additional appointments with Dr. Mclean in October 2010); *id.* at 352 (October 21, 2010 appointment with nurse practitioner associated with Dr. Sobel); *id.* at 329 (additional appointment with Dr. Mclean on November 2, 2010).

symptom of vertigo,[4] Plaintiff had "improved significantly." (*Id.* at 329.) As a consequence, Dr. Mclean directed Plaintiff to contact his office if her symptoms recurred. (*Id.*) Notably, there is no evidence in the record to suggest that Plaintiff ever called or returned to Dr. Mclean. *See Pacheco v. Sullivan,* 931 F.2d 695, 698 (10th Cir. 1991) (an impairment that can be controlled with treatment is not disabling); *Huston v. Bowen,* 838 F.2d 1125 1132 & n.7 (10th Cir. 1988) (lack of further treatment undermines allegation that impairment is disabling).

To be sure, Plaintiff reported some continuing dizziness to Dr. Sobel in February 2011. (AR at 346-47.) However, there is no indication as to the severity or frequency of Plaintiff's symptoms at that time. (*See id.*) Moreover, Dr. Sobel simply instructed Plaintiff to continue with her vestibular exercises. (*Id.* at 347.) There is no evidence in the record to suggest that Plaintiff experienced further vertigo symptoms after that date and prior to the date last insured.[5] *See Pacheco,* 931 F.2d at 698; *Huston v. Bowen,* 838 F.2d at 1132 & n.7.

Accordingly, the court finds that the ALJ set forth legitimate reasons in support of his conclusion that no evidence in the record established the frequency and severity of Plaintiff's vertigo flares at the time Dr. Sobel opined that Plaintiff was disabled due to vertigo in July 2011. Moreover, there is no evidence to suggest that Plaintiff's vertigo was disabling in April 2012 when the hearing was conducted. Indeed, contrary to Dr. Sobel's opinion, Plaintiff testified in

---

[4] Plaintiff argues that the ALJ erred in her credibility determination in finding that Plaintiff's vertigo was "transient. Very suttle [sic]. Questionable." (Opening Br. at 23-24 (quoting AR at 329).) Plaintiff maintains that the opinion did not relate to Plaintiff's vertigo, but instead was specific to her nystagmus (*Id.*) However, even assuming this opinion related to the nystagmus, it does not change the fact that Plaintiff never returned to Dr. Mclean for further treatment and only presented vertigo symptoms to Dr. Sobel on one subsequent occasion in February 2011.

[5] The court disagrees with Plaintiff's assertion that she reported vertigo symptoms to her physical therapist in April through May 2011. (Reply at 5.) The medical records from Plaintiff's physical therapist only note Plaintiff's prior diagnosis of vertigo (AR at 607); there is no notation regarding ongoing vertigo symptoms (*see id.* at 605-607).

April 2012 that she only did her vestibular exercises once or twice every two weeks, and only when her vertigo flares were severe, which was unusual. (AR at 161-62.)

Finally, Plaintiff argues that the ALJ did not "consider to what extent Dr. Sorbel's [sic] opinion concerned limitations related to both vertigo and other conditions, namely anxiety disorder, degenerative disc disease, hypertension, asthma, fatty liver, nocturnal hypoxia, benign neoplasm of the pituitary, and chronic headaches." (Opening Br. at 16.) However, at no point did Dr. Sobel identify any limitations associated with degenerative disc disease, hypertension, asthma, fatty liver, nocturnal hypoxia, or benign neoplasm of the pituitary. (*Id.*) Further, while Dr. Sobel did opine that Plaintiff would suffer from "frequent disabling headaches" (*id.* at 599), the court finds that the ALJ legitimately rejected this opinion because Plaintiff testified at the hearing that her headaches were not severe (*id.* at 145).[6] *Pisciotta v. Astrue,* 500 F.3d 1074, 1078-79 (10th Cir. 2007) (ALJ reasonably discounted treating physician's opinion when it was inconsistent with statements from the claimant and his mother).

Accordingly, the court finds that the ALJ reasonably rejected Dr. Sobel's opinion regarding the limitations imposed by Plaintiff's vertigo and other physical impairments.

B. *Whether the ALJ's Erred in Assessing Plaintiff's Credibility*

Plaintiff next attacks the ALJ's assessment of the credibility of her statements regarding the limitations imposed by her impairments. (Opening Br. at 22-25.) "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks and citation omitted). "However, findings as to

---

[6] Dr. Sobel also opined that Plaintiff would have difficulty concentrating due to her depression and anxiety. This opinion is addressed *infra* in section D.

credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotation marks and citation omitted).

### 1.     *Dizzy Spells due to Vertigo*

The ALJ found that Plaintiff's assertion that the dizzy spells arising from her vertigo lasted throughout the whole day was inconsistent with her admission that she drove up to twice a week, 17-miles at a time. (AR at 125-126.) Plaintiff argues in her Opening Brief that the ALJ misunderstood her testimony as to the distance she typically drove each week and that the ALJ impermissibly placed herself into the role of a medical expert in opining that it could reasonably be assumed that Plaintiff's "treating physicians would advise [her] to refrain from driving a car using heavy moving machinery" if her dizzy spells were as severe as she alleged. (*Id.* at 125-126; Opening Br. at 23.)

Although the record is ambiguous as to the distances Plaintiff drove each week, the court finds that those distances are immaterial to the ALJ's credibility determination. More specifically, the ALJ specifically concluded that if Plaintiff's "dizzy spells were as severe as alleged, she could *never* drive a car." (*Id.* at 125, emphasis added.) The court finds this conclusion to be reasonable, and based on substantial evidence, when Plaintiff testified that her dizzy spells lasted throughout the entire day. (*Id.* at 143.)

Further, because the court finds that the ALJ reasonably concluded that Plaintiff could never drive if the dizziness associated with her vertigo truly lasted throughout the day, her speculation as to the whether Plaintiff's treating physicians would concur with that assessment is superfluous. *McDonald v. Astrue,* 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p,

1996 WL 374183, at *5 (July 2, 1996)) ("the ALJ's RFC assessment is an administrative, rather than a medical, determination.").

### 2. *Ability to Sit, Stand, and Walk*

Plaintiff testified that, due to her pain, she could only sit for 15-30 minutes, had a limited ability to stand, and could walk only 50 feet. (*Id.* at 156.) The ALJ found these alleged physical limitations not credible because (1) Plaintiff did not use a cane or other assistive walking device; (2) Plaintiff's treating physicians opined that she retained a normal gait and station with normal coordination and reflexes; (3) the treating physicians later observed that Plaintiff retained a full range of motion in her knees and had improved trochanteric bursitis and knee pain; and (3) Plaintiff voluntarily discharged herself from physical therapy after reaching short-term goals and having reduced pain. (*Id.* at 126.) Although Plaintiff does not dispute these findings, she does argue that "'[i]mprovement' in these conditions does not indicate that they did not still cause limitations." (Opening Br. at 24.)

The court finds that the ALJ permissibly discounted Plaintiff's allegations of physical limitations. First, the ALJ properly considered both the objective findings of Plaintiff's doctors, as well as the fact that she did not use an assistive device to ambulate. *Keyes-Zachary,* 695 F.3d at 1166-67. Moreover, between April and May 2011, Plaintiff underwent physical therapy for her knee pain, reported significant improvement, and was voluntarily discharged. (AR. at 567, 574, 604.) There is no evidence to suggest that Plaintiff sought further physical therapy. *See Huston,* 838 F.2d at 1132 (in assessing credibility, an ALJ may consider "the extensiveness of the attempts (medical or nonmedical) to obtain relief"); *cf. Shepherd v. Apfel,* 184 F.3d 1196, 1202 (10th Cir. 1999) (ALJ reasonably noted claimant's physical therapy sessions were

10

cancelled because he failed to show up for them).  Accordingly, the court finds that the ALJ's assessment of the credibility of Plaintiff's alleged physical limitations were supported by substantial evidence.[7]

### C.    *Whether the Appeals Council Erred by Failing to Remand Based on the New Evidence Submitted by Plaintiff*

Plaintiff argues that the Appeals Council erred by failing to remand to the ALJ to consider the new evidence she submitted.  (Opening Br. at 25-27.)  Here, the court agrees.[8]

"[T]he Appeals Council must consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision."  *Chambers v. Barnhart,* 389 F.3d 1139, 1142 (10th Cir. 2004) (quotation marks and citations omitted).  "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision."  *Id.* (citations omitted)  "If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request or administrative review (regardless of whether review was ultimately denied), it becomes part of the record [the court] assess[es] in evaluating the Commissioner's denial of benefits under the substantial-evidence standard."  *Id.* (citations omitted).  However, if the evidence qualifies, but the Appeals Council did not consider it, the case should be remanded for further proceedings.  *Id.* (citations omitted).

---

[7] Plaintiff also argues that the ALJ erred in assessing the credibility of the alleged limitations imposed by Plaintiff's mental health impairments.  (Opening Br. at 24-25.)  The court does not consider this argument because it finds that this case is properly remanded to further develop the record as to Plaintiff's depression and anxiety.

[8] Plaintiff also maintains that the ALJ erred in her "Paragraph B" findings at step 2 by finding that Plaintiff's depression and anxiety imposed "no limitations on Plaintiff's daily living activities, social functioning, and concentration, persistence or pace.  (Reply Br. at 3-4.)  Again, in light of the court's decision to remand this action to allow the ALJ to address the new evidence submitted to the Appeals Council, the court need not address this argument.

The new evidence submitted to the Appeals Council included medical records from Audrey Reisch, a Licensed Social Worker.[9] Plaintiff received counseling from Ms. Reisch from August 2012 through July 2013. (AR at 7-35.) Ms. Reich diagnosed Plaintiff with major depression, recurrent, moderate and a "global assessment of functioning" (GAF) of 55. (*Id.* at 31.)

The parties do not dispute that the evidence submitted by Plaintiff to the Appeals Council is new. They disagree, however, as to whether the records from Ms. Reich are relevant. As an initial matter, under the circumstances of this case, the relevant inquiry here is not whether the new evidence relates to the period on or before the date of the ALJ's decision issued in May 2012. *Chambers,* 389 F.3d at 1142. Instead, because Plaintiff applied for DIB only, the court must determine whether these records relate to the period prior to the date Plaintiff was last insured, March 31, 2011. *Flaherty v. Astrue,* 515 F.3d 1067, 1069 (10th Cir. 2007) (in order to be eligible for DIB, the claimant must establish disability on or before her date last insured).

Based on *Krauser v. Astrue,* 638 F.3d 1324, 1327-28 (10th Cir. 2011), the court finds that the medical records received from Ms. Reich relate to the period prior to the date last insured. In *Krauser,* after the ALJ issued its decision, the claimant sought and obtained a referral for possible depression. *Id*. The claimant was ultimately diagnosed with major depression and prescribed an anti-depressant. *Id* at 1328. The claimant thus argued that, in light of this new

---

[9] Plaintiff also submitted a medical record from August 28, 2012 from an endocrinologist stating that her "positional dizziness has returned." (AR at 97.) The court is not convinced that evidence showing that Plaintiff's vertigo symptoms recurred on one occasion approximately 18 months after her last treatment for that condition is related to the time period prior to her last insured date.

evidence, he established a medically determinable impairment, or at least demonstrated the existence of an issue requiring further review. *Id.*

The Tenth Circuit panel found that the new evidence did not relate back to the relevant period because the diagnosis and treatment of depression occurred after the ALJ's decision. *Id.* The court found that the medical records diagnosis the claimant with depression "did not purport to retroactively diagnose a condition existing in the period preceding the ALJ's decision," nor did it "indicate any impaired functioning relating back to that period." *Id.* Importantly, however, the Tenth Circuit also explicitly emphasized "that there were no indications of depression in [the claimant's] medical records in the months immediately leading up to the hearing before the ALJ; rather, his doctor specifically noted he had no psychological abnormalities." *Id.*

Here, as in *Krauser,* Plaintiff's medical records from Ms. Reich do not explicitly include a retroactive diagnosis of depression between Plaintiff's alleged onset date and the date last insured. (AR at 7-35.) However, Ms. Reich found that that the onset date of Plaintiff's depression and anxiety was in 2003 and that in 2006 Plaintiff experienced "many bouts of depression related to health and life stressors," including, but not limited to her father's death. (*Id.* at 31.)

Further, unlike in *Krauser,* there is ample evidence suggesting that Plaintiff had depression and anxiety during the period of time considered by the ALJ. More specifically, on September 2, 2010, Dr. Sternberg opined that his "greatest concern at this point is [Plaintiff's] depression anxiety," which had "its onset with her dad's death five years ago." (AR at 629.) Dr. Sternberg found that Plaintiff had early morning awakenings with difficulty falling asleep,

increased sleep latency of 1-2 hours, daily crying spells, and, most concerning for Dr. Sternberg, "a chronic, background anxiety where she's unable to feel calm or relaxed at any time of the day." (*Id.*) Further, based on Dr. Sternberg's observations, Dr. Sobel placed Plaintiff on anti-depressant medications and treated Plaintiff's depression on several occasions. (*Id.* at 356-58.) And in her July 2011 report, Dr. Sobel opined that Plaintiff's anxiety and depression would make it difficult for Plaintiff to concentrate. (*Id.* at 598.)

The symptoms observed by Ms. Reich in August 2012 giving rise to a diagnosis of depression and a GAF of 55 largely mirror those observed by Dr. Sternberg in September 2010. Ms. Reich found that Plaintiff teared-up 2-3 times a week, had poor self-esteem, was irritable, and had a history of panic attacks. (*Id.* at 31-32.)

Accordingly, the court finds that this case is distinguishable from *Krauser* because the record contains objective indicators of depression and anxiety that correlate strongly with Ms. Reich's subsequent diagnosis of major depression. *See also Baca v. Dep't of Health & Human Servs.,* 5 F.3d 476, 479 (10th Cir. 1993) (citation omitted) ("[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date."). Accordingly, the court finds that Plaintiff's medical records are related to the time period between Plaintiff's alleged onset date and the date last insured.

The court also finds that the Appeals Council did not consider the new evidence received from Ms. Reich. Although the Appeals Council did "look[] at" the new medical records, it

concluded that it did not affect the ALJ's decision because the records all related to a time after the date last insured. This amounts to a rejection of this new evidence. Accordingly, the court finds this case must be remanded to allow the ALJ to consider this new evidence. [10] *Chambers,* 389 F.3d at 1142.

### D.   *Failure to Consider Functional Limitation included in State Agency Physician's Opinion*

As a final matter, Plaintiff argues that the ALJ erred in concluding that Plaintiff's RFC included an ability to lift twenty pounds occasionally and ten pounds frequently when Dr. Ketelhohn specifically opined that Plaintiff could only lift ten pounds occasionally and less than ten pounds frequently. (Opening Br. at 18-19.)

The ALJ is not obligated to include in the RFC assessment every limitation possibly suggested by a medical sources. *See Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ must discuss "the uncontroverted evidence he or she chooses to rely upon and any significantly probative evidence he or she rejects." *Id.*

---

[10] Even the Appeals Council had considered the new evidence from Ms. Reich, the court would still remand this case. The ALJ assessed Plaintiff's mental impairments under the "paragraph B" criteria outlined in 20 C.F.R. § 404.1520 and found that Plaintiff had "no limitations" in activities of dialing living, social functioning and concentration, persistence or pace and had experienced no episodes of decompensation. (*Id.*) However, the fact that Ms. Reich ultimately diagnosed Plaintiff with a GAF score of 55 calls those findings into doubt. More specifically, in contrast to the ALJ's findings, a GAF score of 55 means that an individual has "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers." *Keyes-Zachary,* 695 F.3d at 1162 n.1.

Here, Dr. Ketelhohn's opinion regarding Plaintiff's lifting abilities was likely probative and therefore should have been expressly rejected by the ALJ.[11] More specifically, while the remainder of the ALJ's RFC determination appears to be consistent with light work, an ability to lift ten pounds occasionally and less than ten pounds frequently is more consistent with sedentary work. *See* 20 R.F.C. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time . . . ."). Indeed, in addressing the hypothetical questions posed by the ALJ, the VE testified that an individual who could lift only 10 pounds (and stand and walk two hours out of an eight hour day) could complete only sedentary work and Plaintiff had no skill transferrable to sedentary work. Accordingly, on remand, the ALJ should also directly address Dr. Ketelhohn's opinion to the extent it is inconsistent with her RFC conclusions.

Therefore, for the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this Order. The Clerk shall enter Judgment in accordance herewith. Any request for costs or attorneys' fees shall be made within 14 days of the date of this Order.

Dated this 30th day of March, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

---

[11] The court notes that both Plaintiff and Dr. Sobel represented that Plaintiff could lift up to twenty pounds. (AR at 125, 597.)